# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

INDEA GRACE FORDHAM, (a/k/a INDEA FORD),

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 3:17-cv-00268-SLG

## ORDER RE HABEAS CORPUS PETITION

Before the Court at Docket 1 is Petitioner Indea Grace Fordham's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. The Government opposed the petition at Docket 6. Oral argument was not requested and was not necessary to the Court's decision.

Ms. Fordham's Petition seeks to set aside the Certificate of Extradition entered on December 1, 2017 by Magistrate Judge Kevin McCoy.[1] For the reasons set forth below, the Petition will be denied.

## BACKGROUND

The facts as alleged in the United Kingdom's Extradition Request are as follows: Prior to October 2015, Indea Fordham resided in the United Kingdom. She and Eren Halil were in a relationship for three years and had two children together, G.M.H. and A.L.H.[2] Ms. Fordham and Mr. Halil separated in 2012. In October 2014, the Dartford Family Court

---

[1] Case No. 3:17-mj-00137-KFM, Docket 51 (Certificate of Extradition).

[2] Case No. 3:17-mj-00137-KFM, Docket 2 (United Kingdom Extradition Request) at 14.

at Dartford, United Kingdom entered a Child Arrangements Order, which provided that the children would live with Ms. Fordham and have scheduled visitation with Mr. Halil.[3] The order provides that "[A.L.H's] passport shall then be forwarded and remain in the Father's possession and [G.M.H.'s] passport shall be forwarded to the Mother and remain in her possession until such point as either parent books a holiday, at which point both passports will go to the parent leaving the jurisdiction with the children and return back to each parent at the conclusion of the holiday."[4] Attached to the order is a warning regarding the Child Abduction Act 1984, which provides that "no person may . . . remove the children from the United Kingdom without the written consent of every person with parental responsibility for the children or the leave of the court."[5]

On March 24, 2015, Ms. Fordham applied for a replacement passport for A.L.H. to Her Majesty's Passport Office, representing that A.L.H.'s original passport had been lost. On April 16, 2015, the passport office issued a new passport for A.L.H.[6]

On May 5, 2015, the Dartford Family Court at Maidstone, United Kingdom held a hearing at which Ms. Fordham's application for leave to remove the children from the jurisdiction to live in Alaska was dismissed.[7]

---

[3] Case No. 3:17-mj-00137-KFM, Docket 2 (Child Arrangements Order) at 27.

[4] Case No. 3:17-mj-00137-KFM, Docket 2 at 28.

[5] Case No. 3:17-mj-00137-KFM, Docket 2 at 29.

[6] Case No. 3:17-mj-00137-KFM, Docket 2 at 15.

[7] Case No. 3:17-mj-00137-KFM, Docket 2 (Child Arrangements and Specific Issue Order) at 31–32.

On October 2, 2015, Ms. Fordham left the United Kingdom with G.M.H. and A.L.H. and flew to Washington Dulles without notifying Mr. Halil in violation of the Child Arrangements Order, using A.L.H.'s replacement passport.[8] Mr. Halil discovered the children were gone the following day when he went to pick them up for his regularly scheduled weekend visit under the Child Arrangements Order.[9] Mr. Halil reported the children missing and produced the original, not yet expired, passport for A.L.H.[10] On October 8, 2015, G.M.H. and A.L.H. were made wards of the High Court of Justice Family Division, and Ms. Fordham was ordered to return the children to the United Kingdom forthwith.[11]

On April 4, 2016, the Bromley Magistrates' Court in the United Kingdom issued an arrest warrant for Ms. Fordham, charging her with two counts of child abduction and one count of fraud related to the application to replace A.L.H.'s passport.[12] On June 16, 2016, the Head of Extradition from the United Kingdom formally requested that the U.S. Department of State extradite Ms. Fordham to the United Kingdom to answer for her pending charges.[13] On April 14, 2017, the United States filed a Criminal Complaint in the District of Alaska and sought a warrant for Ms. Fordham's arrest and extradition.[14] The

---

[8] Case No. 3:17-mj-00137-KFM, Docket 2 at 15.

[9] Case No. 3:17-mj-00137-KFM, Docket 2 at 16.

[10] Case No. 3:17-mj-00137-KFM, Docket 2 at 16.

[11] Case No. 3:17-mj-00137-KFM, Docket 2 (High Family Court Order) at 33–34, 40.

[12] Case No. 3:17-mj-00137-KFM, Docket 2 (U.K. Arrest Warrant) at 11–12.

[13] Case No. 3:17-mj-00137-KFM, Docket 2 (U.K. Request) at 7.

[14] Case No. 3:17-mj-00137-KFM, Docket 1 (Compl.).

court issued the warrant, and on April 18, 2017, Ms. Fordham was arrested in Sitka, Alaska.[15]

On April 26, 2017, Magistrate Judge Kevin McCoy held a detention hearing and released Ms. Fordham from custody.[16] Thereafter, both parties filed briefing on the extradition request.[17] Ms. Fordham argued that the extradition request should be denied because "the offense of child abduction under the Abduction Act does not satisfy the dual criminality requirement of the United Kingdom-United States Extradition Treaty, as the conduct does not constitute a crime under the laws of the United States when the defendant is 'fleeing an incidence or pattern of domestic violence.'"[18] She also asserted that the Child Abduction Act "does not apply to persons who take a child outside the United Kingdom with the appropriate consent but *retain* the child beyond the period for which authorization is granted."[19]

On November 6, 2017, Magistrate Judge Kevin McCoy conducted an extradition hearing pursuant to 18 U.S.C. § 3184.[20] At the hearing, Ms. Fordham "elected not to

---

[15] Case No. 3:17-mj-00137-KFM, Docket 14 (Arrest Warrant).

[16] Case No. 3:17-mj-00137-KFM, Docket 17 (Order Setting Conditions of Release).

[17] Case No. 3:17-mj-00137-KFM, Docket 27 (Mem. re Extradition Scope); Case No. 3:17-mj-00137-KFM, Docket 34 (Mot. to Deny Request for Extradition); Case No. 3:17-mj-00137-KFM, Docket 34-1 (Child Abduction Act 1984); Case No. 3:17-mj-00137-KFM, Docket 34-2 (*Nicolaou* case); Case No. 3:17-mj-00137-KFM, Docket 35 (Opp. to Mot. to Deny Request for Extradition).

[18] Case No. 3:17-mj-00137-KFM, Docket 34 at 2–3 (quoting 18 U.S.C. § 1204)).

[19] Case No. 3:17-mj-00137-KFM, Docket 34 at 3 (citing *Nicolaou* [2011] EWHC 1647 U.K.) (emphasis in original).

[20] Case No. 3:17-mj-00137-KFM, Docket 44 (Minute Entry for Hearing on Mot. to Deny Request for Extradition).

present any evidence . . . in support of (1) the allegations of verbal and physical abuse by Halil or (2) the allegation that Halil told her A.L.H,'s passport was lost. Nor did she proffer or present evidence that the Maidstone Family Court failed or refused to consider these allegations."[21] Prior to the hearing, the Government filed a witness statement of Mr. Halil, in which he stated "at no point did I tell Indea that I had lost of mislaid [A.L.H.'s] passport. Indea did not inform me or consult me that she had requested a new passport . . . either."[22] The Government did not present any additional evidence at the hearing apart from its original filing of the extradition request.[23]

On December 1, 2017, the magistrate judge issued a Memorandum Opinion and Certification of Extradition.[24] The court found that dual criminality existed because "[t]he essential character of the criminal acts criminalized by the laws of each country is the same and the laws are substantially analogous."[25] Relying on the documents from the

---

[21] Case No. 3:17-mj-00137-KFM, Docket 51 (Mem. Opinion and Cert. of Extradition) at 11. Ms. Fordham asserts that she took the children out of the United Kingdom with her in violation of the Child Arrangements Order because of Mr. Halil's history of domestic violence towards her and the children. However, at an extradition hearing, the fugitive "is not permitted to introduce evidence on the issue of guilt or innocence but can only offer evidence that tends to explain the government's case of probable cause." *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978).

[22] Case No. 3:17-mj-00137-KFM, Docket 35-1 (Halil's Witness Statement dated October 12, 2017) at 5.

[23] Case No. 3:17-mj-00137-KFM, Docket 42 (Supp. Filings of Exhibits). Upon request of the court, the Government refiled copies of the attachments of the Complaint consisting of documents from the United Kingdom. The documents submitted at Docket 42 are the same documents submitted with the initial complaint at Docket 2 except Docket 2 includes a formal supplement containing Mr. Halil's statement on Ms. Fordham's identity dated September 16, 2016, additional evidence of the identity of Ms. Fordham, and a copy of the extradition treaty between the United States and the United Kingdom.

[24] Case No. 3:17-mj-00137-KFM, Docket 51.

[25] Case No. 3:17-mj-00137-KFM, Docket 51 at 14. The court also found that the affirmative defense that "the defendant was fleeing an incidence or pattern of domestic violence" available

United Kingdom, the magistrate judge held that there was competent evidence of probable cause "to sustain two charges of child abduction . . . and one charge of fraud by false representation . . . presently pending against her in the United Kingdom under the extradition treaty between United Kingdom of Great Britain and Northern Ireland and the United States of America."[26] The court concluded that "Indea Grace Fordham, a.k.a. Indea Ford, is extraditable under the aforesaid treaty, and that further proceedings in extradition may be conducted."[27] On December 28, 2017, Ms. Fordham filed the petition for writ of habeas corpus that instituted this case.[28]

## SCOPE OF REVIEW

"The scope of review of an extradition order is considerably more restricted than that generally engaged in by an appellate court."[29] "The district court's habeas review of an extradition order is limited to whether: (1) the extradition magistrate had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is 'any competent evidence' supporting the probable cause determination of the magistrate."[30]

---

under the U.S.'s International Parental Kidnapping Crime Act (18 U.S.C. § 1204) was not applicable in an extradition hearing since an extradition hearing is not a trial on the merits. Case No. 3:17-mj-00137-KFM, Docket 51 at 14–15.

[26] Case No. 3:17-mj-00137-KFM, Docket 51 at 23.

[27] Case No. 3:17-mj-00137-KFM, Docket 51 at 23. The court further found that Ms. Fordham's defense that she at most unlawfully retained the children and did not abduct the children at the time she left London Heathrow was "a defense on the merits that does not explain away or obliterate probable cause." Case No. 3:17-mj-00137-KFM, Docket 51 at 21.

[28] Docket 1 (Habeas Petition) at 1.

[29] *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978).

[30] *Santos v. Thomas*, 830 F.3d 987, 1001 (9th Cir. 2016) (citation omitted) (quoting *Vo v. Benov*,

Whether an offense comes within a treaty is based on "whether it is listed as an extraditable crime and whether the conduct is illegal in both countries," which is a question of law reviewed *de novo*.[31] "Purely factual questions in extradition cases are reviewed under the clearly erroneous standard."[32] "Because the magistrate's probable cause finding is thus not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues, it must be upheld if there is any competent evidence in the record to support it."[33]

## DISCUSSION

Ms. Fordham does not appear to dispute that the magistrate had jurisdiction; nor does she dispute that a valid treaty was in effect at the time of the extradition hearing. Ms. Fordham asserts two arguments in her petition: (1) child abduction is not an extraditable offense because there is no dual criminality; and (2) there is not probable cause to find that Ms. Fordham violated the Child Abduction Act or committed the offense

---

447 F.3d 1235, 1240 (9th Cir. 2006) (internal citation omitted)); *see also Zanazanian v. United States*, 729 F.2d 624, 625–26 (9th Cir. 1984) ("Our inquiry on petition for writ of habeas corpus challenging an extradition order is limited to whether: 1. the extradition judge had jurisdiction to conduct proceedings; 2. the extradition court had jurisdiction over the fugitive; 3. the extradition treaty was in full force and effect; 4. the crime fell within the terms of the treaty; and 5. there was competent legal evidence to support a finding of extraditability.").

[31] *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986).

[32] *Id.*

[33] *Id.*

of Fraud by False Representation.[34] The petition contains extensive unsworn allegations of domestic violence and abuse perpetrated by Mr. Halil on Ms. Fordham.[35]

### A. Dual Criminality

Ms. Fordham asserts that the United Kingdom's Child Abduction Act and the United States' international child abduction statute "do not punish the same 'basic evil.'"[36] "Dual criminality requires that an accused be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations."[37] Dual criminality does not require that each crime is an "exact duplicate" of the other; but the two crimes must be "sufficiently analogous to satisfy dual criminality."[38]

The Child Abduction Act 1984 c.37, § 1(1), (Eng., Wales) prohibits a parent from taking "the child out of the United Kingdom without the appropriate consent." "Appropriate consent" includes "consent of . . . the child's father, if he has parental responsibility."[39] The International Parental Kidnapping Crime Act ("IPKCA") under United States law provides "[w]hoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or

---

[34] Docket 1 at 11, 17, 19.

[35] *See* Docket 1 at 5–8.

[36] Docket 1 at 11.

[37] *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998) (quoting *United States v. Saccoccia*, 18 F.3d 795, 800 n.6 (9th Cir. 1994)).

[38] *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993).

[39] Child Abduction Act 1984, c.37, § 1(3) (reproduced at Case No. 3:17-mj-00137-KFM, Docket 34-1).

imprisoned[.]"[40]  "Parental rights" means the "right to physical custody of the child," including "visiting rights" arising from a "court order."[41]  Both acts criminalize the removal of children from the country by a parent in violation of a court order or without the consent of the other parent.

Ms. Fordham observes that the IPKCA provides an affirmative defense to victims of domestic violence and there is no analogous equivalent defense for domestic violence victims under United Kingdom law.[42]  She asserts that the existence of that affirmative defense "may not, *by itself*, defeat an extradition request, [but] it is nonetheless relevant to the dual criminality analysis."[43]  The Government argues that the potential affirmative defense in U.S. law is irrelevant to determining extraditability.[44]  The Court agrees with the Government on this point.  The Supreme Court has held that an extradition hearing is "confined to the single question of whether the evidence for the state makes a prima facie case of guilt sufficient to make it proper to hold the party for trial."[45]  "The accused . . . does not have the right to introduce evidence [at an extradition proceeding] in defense because that would require the government seeking his extradition 'to go into a full trial

---

[40] 18 U.S.C. § 1204(a).

[41] 18 U.S.C. § 1204(b).

[42] The IPKCA provides that "It shall be an affirmative defense under this section that . . . the defendant was fleeing an incidence or pattern of domestic violence[.] 18 U.S.C. § 1204(c)(2).

[43] Docket 1 at 13.

[44] Docket 6 at 14.

[45] *Charlton v. Kelly*, 229 U.S. 447, 461 (1913).

on the merits in a foreign country.'"[46] Courts have routinely followed this procedure.[47] Accordingly, the United Kingdom's Child Abduction Act and the United States' IPKCA satisfy the dual criminality requirement and the magistrate judge did not err in rejecting Ms. Fordham's argument that the potential affirmative defense under the IPKCA precludes a finding of dual criminality.[48]

*B. Probable Cause*

Ms. Fordham next asserts the magistrate judge erred in his probable cause determinations. On habeas review, this Court considers whether there is "any competent evidence" to support the probable cause determinations.[49] Ms. Fordham does not contest the authenticity of the evidence before the magistrate judge. Rather, she challenges its sufficiency.

On the child abduction charges, Ms. Fordham asserts that "[t]here is no probable cause to conclude that Ms. Ford violated the Child Abduction Act, because it is not

---

[46] *Santos v. Thomas*, 830 F.3d 987, 992 (9th Cir. 2016) (quoting *Collins v. Loisel*, 259 U.S. 309, 316 (1922) (internal citation omitted)).

[47] *See Charlton*, 229 U.S. at 461–62 (rejecting insanity defense at extradition hearing); *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) ("Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible."); *In re Extradition of Santos*, 795 F. Supp. 2d 966, 984 (C.D. Cal. 2011) ("[E]vidence that *contradicts or controverts* the existence of probable cause is inadmissible, including evidence establishing a defense or exonerating the accused." (emphasis in original)).

[48] Ms. Fordham's argument that she should not be extradited because the United Kingdom is a signatory to the Hague Convention is without merit. *See* Docket 1 at 15–16. The Hague Convention is a "*civil remedy* adopted to effect the return of children brought to other countries." *United States v. Ventre*, 338 F.3d 1047, 1052 (9th Cir. 2003) (emphasis in original). Moreover, the IPKCA provides that "[t]his section does not detract from The Hague Convention on the Civil Aspects of International Parental Child Abduction." 18 U.S.C. § 1204(d).

[49] *See Santos*, 830 F.3d at 1001.

unlawful under the Act to retain a child outside of the United Kingdom."[50] Her petition asserts that when she left the United Kingdom, she only intended to visit relatives for a short time, and therefore she did not abduct the children but rather retained the children outside of the United Kingdom.[51] The Government responds that "[t]he record amply supports the magistrate judge's finding of probable cause to believe petitioner violated the U.K.'s Child Abduction Act."[52]

Ms. Fordham relies on a United Kingdom case, *Nicolaou* (2011) EWHC 1647 UK, to support her argument.[53] In *Nicolaou*, the father took the child out of the United Kingdom to Cyprus for a three week trip after obtaining a court order, but then kept the child out of the United Kingdom for a number of years thereafter. A warrant was issued for the father's arrest. The United Kingdom's High Court quashed the warrant because it found that the father had not abducted the child when he left the United Kingdom, but rather had impermissibly *retained* the child in Cyprus after the three week holiday. *Nicolaou* does not support Ms. Fordham's argument because she did not obtain a court order authorizing her to leave the United Kingdom. To the contrary, her request to the court to take the children to Alaska was dismissed.

The magistrate judge reviewed the exhibits filed by the Government, including the Child Arrangements Order entered by the Family Court in the United Kingdom requiring

---

[50] Docket 1 at 17.

[51] Docket 1 at 8, 17.

[52] Docket 6 at 19.

[53] *See* Docket 1 at 17 (*Nicolaou* reproduced at Case No. 3:17-mj-00137-KFM, Docket 1-1).

that each parent would retain one child's passport.[54] The Government also provided the Child Arrangements and Specific Issue Order denying Ms. Fordham's request to amend the Child Arrangements Order that would have allowed her to relocate to Alaska.[55] Ms. Fordham did not introduce any evidence at the extradition hearing in an effort to negate probable cause on the two child abduction counts. The Court's role on habeas review is to determine if there was any competent evidence to support the magistrate judge's probable cause determination; its task is not to determine whether the evidence is sufficient to justify a conviction.[56] In this case, there clearly was competent evidence in the record to support the magistrate judge's probable cause determination regarding Ms. Fordham's alleged violations of the Child Abduction Act when she removed G.M.H. and A.L.H. from the United Kingdom.

On the Fraud Act charge, Ms. Fordham asserts that "[t]he Government has not provided any evidence that Ms. Ford knew the passport had not been lost or misplaced."[57] The Government filed the Child Arrangements Order and Mr. Halil's witness statement in which he confirmed he had possession of A.L.H.'s unexpired passport and that he had not told Ms. Fordham that he had lost the passport.[58] Accordingly, there was competent

---

[54] Case No. 3:17-mj-00137-KFM, Docket 2 at 14.

[55] Case No. 3:17-mj-00137-KFM, Docket 2 at 15.

[56] *See Collins*, 259 U.S. at 316.

[57] Docket 1 at 19–20.

[58] Case No. 3:17-mj-00137-KFM, Docket 2 at 16, 27; Case No. 3:17-mj-00137-KFM, Docket 35-1 at 5.

Case No. 3:17-cv-00268-SLG, *Indea Grace Fordham v. United States*
Order re Habeas Petition
Page 12 of 13

evidence provided to the magistrate judge to find probable cause that Ms. Fordham violated the Fraud Act.

## CONCLUSION

In light of the foregoing, Ms. Fordham's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is DENIED. The Clerk of Court is directed to enter a final judgment.

DATED this 12th day of February, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE